# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| EMMA KOE et al., <br><br> Plaintiffs, <br><br> v. <br><br> CAYLEE NOGGLE et al., <br><br> Defendants. | Civil Action No. 1:23-cv-02904-SEG |

## SUR-REPLY IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). Plaintiffs have not carried that burden here. They cannot show that the alleged right to cross-sex hormones for minors experiencing gender dysphoria is deeply rooted in our history and traditions. Nor can Plaintiffs show that the law discriminates on the basis of sex, since the law applies to all minors evenhandedly regardless of their sex, and individuals who identify as transgender are not a suspect class. Plaintiffs also cannot show they face irreparable harm, since none contend that they are seeking these treatments *now* as opposed to some vague time in the "near future." Pls. Reply at 12. None of this justifies a preliminary injunction.

1

Plaintiffs repeat three times that "nearly every court" has enjoined similar laws. Pls. Reply at 1, 3, 7. But less than two weeks ago, the Sixth Circuit issued a precedential decision allowing Tennessee's similar law to take effect pending further litigation. *See L.W. by & through Williams v. Skrmetti*, No. 23-5600, 2023 WL 4410576 (6th Cir. July 8, 2023). And a district court stayed a preliminary injunction of "a substantially similar statute" in Kentucky days after that. *See Doe 1 v. Thornbury*, No. 3:23-cv-00230-DJH, ECF 79 (W.D. Ky. July 14, 2023).

As the Sixth Circuit explained, "state legislatures play a critical role in regulating health and welfare, and their efforts are usually 'entitled to a strong presumption of validity.'" *L.W.*, 2023 WL 4410576 at *5 (quoting *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2284 (2022)). This Court "must be vigilant not to 'substitute' [its] views" for the Georgia Legislature's. *Id.* Especially in this "area of unfolding medical and policy debate," where "the medical and regulatory authorities are not of one mind about using hormone therapy to treat gender dysphoria," Georgia "could rationally take the side of caution before permitting irreversible medical treatments of its children." *Id.* at *4, *6. Georgia has wide latitude to regulate medical procedures, and it did so appropriately here. The Court should deny a preliminary injunction.

# ARGUMENT

**I.      Plaintiffs are unlikely to succeed on the merits.**

Plaintiffs' failure to show a likelihood of success on the merits is "fatal." *ACLU of Fla.*, 557 F.3d at 1198. SB 140 interferes with no fundamental right and does not discriminate on the basis of sex.

> **A. Plaintiffs' substantive due process claim fails because there is no deeply rooted historical right to administer minors cross-sex hormones for gender dysphoria.**

Plaintiffs cannot show that the alleged right to obtain cross-sex hormones for minors experiencing gender dysphoria is "deeply rooted in our history and traditions," *Washington v. Glucksberg*, 521 U.S. 702, 727 (1997), and thus "beyond the democratic process to regulate." *L.W.*, 2023 WL at *4. Instead, Plaintiffs "seek to extend" constitutional guarantees "to new territory." *Id.* at *3. On its face, then, "the key premise of a preliminary injunction—likelihood of success on the merits—is missing." *Id.*

Plaintiffs insist (at 7) they are not asking this court to "recogniz[e] *new* rights." Instead, they attempt to locate the right to cross-sex hormones for minors somewhere within a general parental right to "make medical decisions for their children." Pls. Reply at 7. Although the Supreme Court has recognized a parental right "to make decisions concerning the care, custody, and control of their children," *Troxel v. Granville*, 530 U.S. 57, 66 (2000), it has "confine[d]" that right "to narrow fields"

3

like education and visitation rights. *L.W.*, 2023 WL at *4 (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923) and *Troxel*, 530 U.S. at 57). But "[n]o Supreme Court case extends it to a general right to receive new medical or experimental drug treatments." *Id.* And "[m]ost circuits have drawn the same line, 'reject[ing] arguments that the Constitution provides an affirmative right of access to particular medical treatments reasonably prohibited by the Government.'" *Id.* at *5.

Plaintiffs complain (at 7) that the State's effort to "define the right as treatment-specific" is misplaced. But that argument ignores the Supreme Court's clear instruction that any "right must be defined with care," since "constitutionalizing areas of public policy" is always "high stakes." *L.W.*, 2023 WL at *4 (citing *Glucksberg*, 521 U.S. at 721) (requiring a "'careful description' of the asserted fundamental liberty interest").

Plaintiffs are also wrong in denying that "parents' right to make decisions about their children's care depends on the existence of an underlying right." Pls. Reply at 8. A parent's right to make decisions for a child simply cannot not "sweep[] more broadly than an adult's right to make decisions for herself." *L.W.*, 2023 WL at *6. Thus a parent cannot demand medical interventions for their child to which no one can claim a constitutional right. *See* Def's Response at 12-15. And courts have resoundingly rejected the notion that *anyone* has a constitutional right to demand a particular drug or medical intervention, even when the plaintiffs seek such access to

4

treat a terminal illness. *See, e.g.*, *Abigail Alliance for Better Access to Dev. Drugs v. von Eschenbach*, 495 F.3d 695, 703 (D.C. Cir. 2007) (en banc) (rejecting substantive due process claim).

The new, highly generalized right Plaintiffs assert cannot displace Georgia's interest or police power here. Georgia and other states "have an abiding interest in 'preserving the welfare of children,'" and "'in protecting the integrity and ethics of the medical profession.'" *L.W.*, 2023 WL at *4. Those interests "give States broad power" to regulate in service of those ends—"even broad power to 'limit[] parental freedom,' particularly in an area of new medical treatment." *Id.* (citations omitted). States across the country are currently "engaged" in "nascent policy deliberations" about medical interventions for children experiencing gender dysphoria. *Id.* at *3. Indeed, the Sixth Circuit specifically cited the Georgia law being challenged here as an example of such deliberations. *Id.* SB 140 is a legitimate exercise of the State's authority to protect children from experimental medical interventions with potentially irreversible effects. Thus this Court "must be vigilant not to 'substitute' [its] views for those of [the] legislature[]"—especially since Plaintiffs ask this court to apply "unenumerated guarantees." *Id.* at *5 (citing *Dobbs*, 142 S. Ct. at 2284).

Finally, Plaintiffs claim (at 8-9) that "every major medical organization in the United States agrees that these treatments are safe, effective, and appropriate." But the Sixth Circuit just considered that precise argument and found that the "medical

5

community" is simply not "of one mind about the use of hormone therapy for gender dysphoria." *L.W.*, 2023 WL at *5; *see also Gibson v. Collier*, 920 F.3d 212, 221 (5th Cir. 2019) ("[T]he WPATH Standards of Care reflect not consensus, but merely one side in a sharply contested medical debate over sex reassignment surgery."). Nor does the "medical community" get to dictate constitutional law. The "Constitution does not require [Georgia] to view these treatments the same way as the majority of experts." *L.W.*, 2023 WL at *5. Where, as here, "'medical and scientific uncertainty' exists," judicial deference "is especially appropriate." *Id.*

Defendants will respond comprehensively to Plaintiffs' medical evidence via their forthcoming expert reports and at the subsequent evidentiary hearing. But the Sixth Circuit was indisputably correct about the lack of any scientific consensus in favor of administering cross-sex hormones to minors experiencing gender dysphoria. Just last week, nearly two dozen clinicians and researchers from nine countries who are "involved in direct care for the rapidly growing number of gender-diverse youth," emphasized that "[e]very systematic review of evidence to date … has found the evidence for mental-health benefits of hormonal interventions for minors to be of low or very low certainty." R. Kaltiala et al., *Youth Gender Transition is Pushed Without Evidence*, Wall St. J. (Jul. 14, 2023), perma.cc/7JFF-RSHL. "By contrast, the risks are significant and include sterility, lifelong dependence on medication and the anguish of regret." *Id.*; *see also, e.g.,* Landén et

6

al., *A systematic review of hormone treatment for children with gender dysphoria and recommendations for research,* Acta Paediatrica, 2023;00:2,12 (Apr. 17, 2023), shorturl.at/ipHU0 (concluding that the "long-term effects of hormone therapy on psychosocial and somatic health are unknown").

### B. Plaintiffs' equal protection claim is unlikely to succeed.

Plaintiffs' equal protection claim is equally unlikely to succeed. Plaintiffs "assum[e] that heightened scrutiny applies," arguing that SB 140 discriminates on the basis of sex. *L.W.*, 2023 WL at *6. But this Court, like the Sixth Circuit, should be "skeptical." *Id.* Like Tennessee's law, SB 140 bans cross-sex hormone therapy "for minors of both sexes." *Id.* "The ban thus applies to all minors, regardless of their biological birth with male or female sex organs," and "[t]hat prohibition does not prefer one sex to the detriment of the other." *Id.* As Plaintiffs admit (at 6), "[t]his case does not involve medical care that only patients of one natal sex would receive." In any event, *Dobbs* confirms that rational basis review applies to health-and-safety measures. *See* 142 S. Ct. at 2245-46.

Plaintiffs' reply relies heavily on the proposition that individuals who identify as transgender are a quasi-suspect class. Pls. Reply 4-6. But neither the Supreme Court nor the Eleventh Circuit has recognized such a class. "The bar for recognizing a new quasi-suspect class … is a high one." *L.W.,* 2023 WL at *7. And the Supreme Court has hesitated to recognize any new ones in the last forty years. As the Sixth

7

Circuit explained:

> That hesitancy makes sense here. Gender identity and gender dysphoria pose vexing line-drawing dilemmas for legislatures. Plenty of challenges spring to mind. Surgical changes versus hormone treatment. Drugs versus counseling. One drug versus another. One age cutoff for minors versus another. Still more complex, what about sports, access to bathrooms, definitions of disability? And will we constitutionalize the FDA approval rules in the process? Even when accompanied by judicial tiers of scrutiny, the U.S. Constitution does not offer a principled way to judge each of these lines—and still others to boot. All that would happen is that we would remove these trying policy choices from fifty state legislatures to one Supreme Court. Instead of the vigorous, sometimes frustrating, 'arena of public debate and legislative action' across the country and instead of other options provided by fifty governors and fifty state courts, we would look to one judiciary to sort it all out. That is not how a constitutional democracy is supposed to work—or at least works best—when confronting evolving social norms and innovative medical options.

*Id.* (citations omitted).

Nor does *Bostock* resolve any of the issues in this case. Plaintiffs claim (at 5) that "[n]othing in *Bostock* confines the Court's core logic that transgender discrimination necessarily is sex discrimination to Title VII." But on its face, *Bostock* applies only to Title VII. It expressly did "not prejudge" the meaning of any other laws governing sex discrimination. *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1753 (2020). Notably, just three weeks ago, *Bostock*'s author rejected extending *Bostock* to the Equal Protection Clause as "implausible on its face." *Students for Fair Admissions, Inc. v. President & Fellows of Harvard*, 143 S. Ct. 2141, 2220 (2023) (Gorsuch, J., concurring). Indeed, the Equal Protection Clause "predates Title VII by nearly a century, so there is reason to be skeptical that its protections reach

so far." *Brandt v. Rutledge*, 2022 WL 16957734, at *1 n.1 (8th Cir. Nov. 16, 2022) (Stras, J., dissenting from denial of rehearing en banc).

Nor does *Brumby* apply here. *See* Pls. Reply at 5. SB 140 is not a classification based on an individual's "gender nonconformity." *Glenn v. Brumby*, 663 F.3d 1312, 1320 (11th Cir. 2011). Instead, it prohibits the use of experimental treatments on children that could have permanent lifelong effects including sterility and other permanent physical changes. And the Eleventh Circuit itself has explained that *Brumby* "dealt" only "with workplace discrimination involving nonconformity with sex stereotypes" not "'sex,' generally." *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 813 (11th Cir. 2022) (en banc).

### C. SB 140 survives any level of review.

Because no fundamental right is at stake, SB 140, "like other health and welfare laws, is entitled to a 'strong presumption of validity.'" *Dobbs*, 142 S. Ct. at 2284. "It must be sustained if there is a rational basis on which the legislature could have thought that it would serve legitimate state interests." *Id*. SB 140 easily survives such scrutiny. Yet even under heightened scrutiny, Georgia's law passes muster. "The State plainly has authority, in truth a responsibility, to look after the health and safety of its children." *L.W.*, 2023 WL at *6. And SB 140 is plainly related to that important governmental objective.

Plaintiffs ask this Court (at 8-9) to defer to the positions of various medical

associations that these life-altering and potentially irreversible medical interventions "are safe, effective, and appropriate" for Georgia children. But, as explained, Georgia's "power to legislate in this area" does not "depend[] on research conducted by" various parts of "the [medical] community." *Jones v. United States*, 463 U.S. 354, 364 n.13 (1983). In all events, Defendants' forthcoming expert reports will (like many international scientists already have) comprehensively explain how Plaintiffs' experts dramatically oversell the alleged benefits of cross-sex hormones for minors while discounting the well-documented and severe risks of lifelong harm.

Finally, Plaintiffs argue (at 10) that the State cannot be sincere in its effort to protect children because SB 140 includes a continuing-care exception that allows individuals currently receiving cross-sex hormones to continue to do so. But "[a] state may legitimately use grandfather provisions" when "reliance interests" may be involved. *Haves v. City of Miami*, 52 F.3d 918, 922 (11th Cir. 1995). The Sixth Circuit recently held that Tennessee's continuing-care exception was a "feature" that "*lessens* the harm to those minors who wish to continue receiving treatment." *L.W.*, 2023 WL at *8 (emphasis added). Georgia's continuing-care exception is even broader than Tennessee's since it does not have an end date (unlike the Tennessee law whose exception extends only through March 2024).[1]

---

[1] Ironically, while the ACLU of Georgia is arguing here that the *presence* of a continuing-care exception somehow undermines the constitutionality of SB 140, the ACLU of Kentucky

10

## II. Plaintiffs failed to establish a cognizable injury and face no imminent irreparable harm.

Plaintiffs have not established any legally cognizable injury much less immediate irreparable harm. None has decided to undergo hormone replacement therapy *now* or has made plans to begin such therapy at any specific point. Plaintiffs make, at best, vague indications that they generally intend to do so at some point in the "near future." Pls. Reply at 12. This does not suffice for either Article III standing or the irreparable injury prong of the preliminary injunction analysis. Indeed, Plaintiffs admit (at 12) that they "have not rushed … onto hormone therapy" and do not allege that they are "rush[ing]" to do so now. Minds can change—as countless do in this area—and Plaintiffs have not established, or even alleged, that SB 140 prevents them from doing anything they immediately intend to do. There is no showing of a concrete injury that is "certainly impending." *See City of S. Miami v. Governor*, 65 F.4th 631, 636 (11th Cir. 2023). And Plaintiffs' delay in filing this suit confirms their lack of irreparable harm. *See* Def's Response at 11. None of this justifies the "extraordinary and drastic remedy" of a preliminary injunction. *ACLU of Fla., Inc.*, 557 F.3d at 1198.

## III. The balance of equities and public interest favor the State.

If this Court enjoins SB 140, Georgia "will suffer irreparable harm from its

---

simultaneously argued that the *absence* of a continuing-care exception should doom Kentucky's law. *See Doe 1 v. Thornbury*, No. 3:23-cv-00230-DJH, ECF 77 at 1-2, (W.D. Ky. July 11, 2023).

inability to enforce the will of its legislature, to further the public-health considerations undergirding the law, and to avoid irreversible health risks to its children." *L.W.*, 2023 WL at *8. "[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012). In enacting SB 140, Georgia's "elected representatives" weighed the public interest and "made … precise cost-benefit decisions." *L.W.*, 2023 WL at *8. As explained, SB 140 protects Georgia's children from controversial and experimental treatments that risk long-term, irreversible consequences to their health.

Indeed, *not* allowing SB 140 to go into force would pose a serious risk of irreparable harm to children living in Georgia. *See Indiana State Police Pension Tr. v. Chrysler LLC*, 556 U.S. 960, 960 (2009) (in balancing the equities, courts may consider the "'interests of the public at large'"). As the attached declarations show, providers have pushed life-altering medicalized gender transitions onto minors with minimal consultation, even if the face of other serious comorbidities and mental health challenges. *See* Declaration of Yvonne Yoe ¶¶ 4-8 (noting that child with "learning disability, anxiety, [and] depression" suddenly asserted transgender identity at age 12 while undergoing psychotherapy for eating disorder and was pressured to undergo medicalized gender transition); Declaration of Robert Roe ¶¶ 4-11 (noting that child's therapist ignored child's comorbidities and pressured

12

parents "after the third or fourth visit" to allow child to "receive puberty blockers or cross-sex hormones"); Declaration of Barbara F. ¶¶ 5-8 (noting that clinic pressured child to start "medical interventions" rather than receive "more in-dept psychological help" after "sudden identification" as transgender); Declaration of Kellie C. ¶¶5-7 (noting that medical providers pushed "medical interventions" on child, who is in a residential treatment center, despite child's "myriad comorbidities and unaddressed sexual trauma").

Medical providers have also faced lawsuits for fraud and malpractice for pushing life-altering and irreversible "gender transitions" on vulnerable minors without providing anything remotely resembling informed consent. *See* Complaint, *Mosley v. Emerson*, No. 23-cvs-2375 (N.C. Super. filed July 17, 2023) (attached); *id.* at ¶2 (doctors withheld "critical information from her about the long-term adverse health consequences and permanent damage these 'treatments' would cause her"). Any consideration of the equities must consider the countervailing harm to children who would be permanently harmed by such interventions if SB 140 is not allowed to take effect.

At bottom, SB 140 "'represents a proper legislative choice'" among "'competing public concerns.'" *Otero v. Vito*, No. 5:04-CV-211, 2006 WL 8446107, at *3 (M.D. Ga. Jan. 13, 2006). And "[t]his Court is not in a position to second-guess the choice that the Georgia legislature has made," especially on a truncated record

Case 1:23-cv-02904-SEG   Document 78   Filed 07/19/23   Page 14 of 18

and in an emergency posture. *Id.; see also FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993) ("equal protection" claims are "not a license for courts to judge the wisdom, fairness, or logic of legislative choices"); *Oakes v. Collier Cnty.*, 515 F. Supp. 3d 1202, 1209 (M.D. Fla. 2021) ("[F]ederal courts do not sit in a policy-checking capacity to second guess the wisdom of state legislative acts."). Simply put, Georgia's interests in "applying the law to its residents and in being permitted to protect its children from health risks weigh heavily in favor of the State at this juncture." *L.W.*, 2023 WL at *8.

### IV. Scope of Relief

Although this Court should deny the preliminary injunction in its entirety, if the Court does grant relief, it should limit that relief to the named plaintiffs. Injunctions must be "limited in scope to the extent necessary to protect the interests of the parties." *Keener v. Convergys Corp.*, 342 F.3d 1264, 1269 (11th Cir. 2003). "[T]he 'judicial Power' is the power to 'decide cases for parties, not questions for everyone.'" *United States v. Texas*, 143 S. Ct. 1964, 1980 (2023) (Gorsuch, J., concurring in judgment). Thus courts must "adjudicate[e] the rights of the parties before them." *United States v. Hansen*, 143 S. Ct. 1932, 1952 (2023) (Thomas, J., concurring). And relief "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018). Only "procedural devices" like class actions—which this case is not— "allow nonparties" to receive "the protection of

injunctive relief." *Georgia v. President of the United States*, 46 F.4th 1283, 1306 (11th Cir. 2022). Courts may not "circumvent" those rules. *Texas*, 143 S. Ct. at 1980 (Gorsuch, J., concurring).

It is "unnecessary" and inappropriate to "extend[] the injunction to nonparties" here. *Georgia*, 46 F.4th at 1307. Other courts agree. Last month, a district court denied statewide relief in a challenge to Florida's law prohibiting certain hormone treatments for minors. *See Doe v. Ladapo*, 2023 WL 3833848, at *17 (N.D. Fla. June 6). And the most recent circuit court to rule on the issue presented here stayed a statewide injunction on appeal because it was overbroad and exceeded "the nature of the federal judicial power." *L.W.*, 2023 WL at *3. Even the dissenting judge—who thought Tennessee's law was likely constitutional—agreed that the district court "abused its discretion in granting a statewide preliminary injunction." *Id.* at *10 (White, J., concurring in part and dissenting in part). Any relief should be equally limited to the named plaintiffs here even if the Court concludes that a preliminary injunction is warranted.

## CONCLUSION

The Court should deny Plaintiff's motion for a preliminary injunction.

Respectfully submitted this 19th day of July, 2023.

| | |
|---|---|
| Christopher M. Carr<br>  *Attorney General*<br>  Georgia Bar No. 112505<br>Stephen J. Petrany<br>  *Solicitor General*<br>  Georgia Bar No. 718981<br>Ross W. Bergethon<br>  *Principal Deputy Solicitor General*<br>  Georgia Bar No. 054321<br>Georgia Department of Law<br>40 Capitol Square SW<br>Atlanta, Georgia, 30334<br>404-458-3408<br>spetrany@law.ga.gov | */s/ Jeffrey M. Harris*<br>Jeffrey M. Harris\*<br>Cameron T. Norris\*<br>Tiffany H. Bates\*<br>Consovoy McCarthy PLLC<br>1600 Wilson Blvd., Suite 700<br>Arlington, VA 22209<br>(703) 243-9423<br>jeff@consovoymccarthy.com<br>cam@consovoymccarthy.com<br>tiffany@consovoymccarthy.com<br><br>Patrick Strawbridge\*<br>Consovoy McCarthy PLLC<br>Ten Post Office Square<br>8th Floor South PMB #706<br>Boston, MA 02109<br>(617) 227-0548<br>patrick@consovoymccarthy.com<br><br>\**pro hac vice*<br><br>*Attorneys for Defendants* |

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief conforms to the requirements of L.R. 5.1C. The brief is prepared in 14 point Times New Roman font.

*/s/ Jeffrey M. Harris*

## CERTIFICATE OF SERVICE

I certify that, on July 19, 2023, I electronically filed the foregoing with the Court and served it on opposing counsel through the Court's CM/ECF system. All counsel of record are registered ECF users.

*/s/ Jeffrey M. Harris*
