## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

EMMA KOE, et al.,

                                    Plaintiffs,

            v.                                          Civil Action No. 1:23-cv-02904-SEG

RUSSEL CARLSON, et al.,

                                    Defendants.

## MOTION FOR RECONSIDERATION

Yesterday, the Eleventh Circuit issued its decision in *Eknes-Tucker v. Governor of the State of Alabama*, No. 22-11707 (attached), which vacated an order preliminarily enjoining an Alabama law similar in relevant part to Georgia's SB 140. In its opinion, the Eleventh Circuit expressly addressed—and rejected—each of the core legal theories Plaintiffs here advanced in support of their motion for preliminary injunction. In light of the intervening precedent in *Eknes-Tucker*, Defendants respectfully move for reconsideration of this Court's order (Dkt. No. 106) granting Plaintiffs' motion for preliminary injunction. *See* Local Rule 7.2(E); Fed. R. Civ. Pro. 54(b), 60(b). This Court should grant the motion for reconsideration, vacate its prior order, and deny plaintiffs' motion for preliminary injunction.

## STANDARD

"A district court has the discretion to revise or reconsider interlocutory orders at any time before final judgment has been entered." *Bryant v. Jones*, 696 F. Supp. 2d 1313, 1320 (N.D. Ga. 2010). "A motion for reconsideration generally is appropriate where there is: (1) newly discovered evidence; (2) an intervening development or change in controlling law; or (3) a need to correct a clear error of law or fact." *Id.*; *see also Wheeler v. United States of Am.*, No. 5:12-CV-08027-KOB,

2015 WL 6152897, at *1 (N.D. Ala. Oct. 20, 2015) ("Courts in this circuit have recognized that an intervening change in controlling law is also a ground for reconsideration and an exception to the law of the case doctrine.") (citing *Summit Med. Ctr. Of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003); *Oliver v. Orange Cnty., Fla.*, 456 F. App'x 815, 818 (11th Cir. 2012)).

This Court's Local Rules provide that motions for reconsideration "shall not be filed as a matter of routine practice" and should only be filed when "absolutely necessary." LR 7.2(E). This is such a case. An intervening precedential decision of the Eleventh Circuit issued one day after this Court's preliminary injunction order has clarified the law in this area and squarely foreclosed each of the core arguments raised in support of Plaintiffs' motion for preliminary injunction.

## ARGUMENT

In *Eknes-Tucker*, the Eleventh Circuit reviewed a district court decision enjoining an Alabama law that, like SB 140, was enacted to protect minors from the irreversible harms of cross-sex hormonal interventions. Alabama's Vulnerable Child Compassion and Protection Act made it a felony to perform certain medical procedures on a minor "for the purpose of attempting to alter the appearance of or affirm the minor's perception of his or her gender or sex, if that appearance or perception is inconsistent with the minor's sex," including "[p]rescribing or administering supraphysiologic doses of testosterone or androgens to females" or "[p]rescribing or administering supraphysiologic doses of estrogen to males." *Eknes-Tucker,* slip op. at 9. Like the Georgia Legislature in SB 140, the Alabama Legislature made several findings in support of the law, including that cross-sex hormonal interventions "should not be presented to or determined for minors who are incapable of comprehending the negative implications and life-course difficulties attending to these interventions." *Id.* at 8.

I.     **The Eleventh Circuit confirmed that state laws like SB 140 are subject to rational basis review rather than heightened scrutiny.**

Central to this Court's holding that Plaintiffs were likely to succeed on the merits was its conclusion that SB 140 relied on sex-based classifications and was therefore subject to heightened "intermediate" scrutiny. *See* Dkt. No. 106 at 37-47. But the Eleventh Circuit has now rejected that precise argument in holding that Alabama's similar law was not sex-based and should be reviewed only under the highly deferential "rational basis" standard." *Eknes-Tucker*, slip op. at 38-48.

*First*, the Eleventh Circuit held that Alabama's statute "does not establish an unequal regime for males and females" because it "does not distinguish between men and women," unlike prior cases addressing laws that uniquely deprived women or men of benefits or opportunities. *Id.* at 42; *see also id.* (Brasher, J., concurring), at 5 (Alabama law not subject to heightened scrutiny because "[i]t bans a course of treatment … for a particular condition that affects both boys and girls."). So too here. SB 140 equally prohibits cross-sex hormones from being administered to boys or girls as a treatment for gender dysphoria.

*Second*, the Eleventh Circuit emphasized that "[t]he cross-sex hormone treatments for gender dysphoria are different for males and females because of *biological differences* between males and females—females are given testosterone and males are given estrogen." *Id.* at 42 (emphasis added). That reasoning forecloses this Court's holding that SB 140 is subject to heightened scrutiny because "a minor's sex at birth determines whether that minor can receive a given form of medical treatment." Dkt. No. 106 at 39. The Eleventh Circuit has instead agreed with Defendants' position that administering cross-sex hormones to induce or inhibit the development of certain physical characteristics as a treatment for gender dysphoria is not *similarly situated* to a treatment in which hormones are administered to remedy a deficiency. *See* Hruz Report ¶¶49-55, 74-76; Laidlaw Report ¶¶119-56. As Dr. Laidlaw explained both in his report and

3

at the hearing, natal girls who are administered cross-sex testosterone to treat gender dysphoria will have levels of testosterone *six to one hundred times higher* than naturally occurring levels. *See* Laidlaw Report ¶137. This intervention is in no relevant sense similarly situated to a boy who is given testosterone to remedy a deficiency. These are different treatments for different conditions with profoundly different risks and benefits. To the extent SB 140 draws classifications, they distinguish among *medical treatments* and are simply not the type of sex-based classifications that trigger heightened scrutiny. *See also Eknes-Tucker* (Brasher, J., concurring), at 4 (noting that the question whether "those who want to use the drugs to treat a discordance between their sex and gender identity and those who want to use these drugs to treat other conditions" are "similarly situated" does not seem "suited to heightened scrutiny").

*Third*, the Alabama plaintiffs argued—relying heavily on *Glenn v. Brumby*, 663 F.3d 1312 (11th Cir. 2011)—that the Alabama law "indirectly classifies on the basis of sex by classifying on the basis of gender nonconformity." *Eknes-Tucker*, slip op. at 43-46. This Court reached the same conclusion, discussing *Brumby* extensively, *see* Dkt. No. 106 at 42-46, and holding that SB 140 is a sex-based classification because it "bans the use of cross-sex hormones only for those whose gender identity and natal sex are incongruent, and only for the purpose of achieving gender-nonconforming physical characteristics," *id.* at 42-43. The Eleventh Circuit, however, reached the opposite conclusion, holding that *Brumby* was limited to "gender stereotyping in the context of employment discrimination." *Eknes-Tucker*, slip op. at 44. "That is not the scenario presented here." *Id.* at 45. Alabama's law, like Georgia's, "targets certain medical interventions for minors meant to treat the condition of gender dysphoria; it does not further any particular gender stereotype." *Id.*

4

**II.**   ***Eknes-Tucker* confirms that Plaintiffs have no likelihood of prevailing under the rational-basis standard.**

The Eleventh Circuit further held that "states have a compelling interest in protecting children from drugs, particularly those for which there is uncertainty regarding benefits, recent surges in use, and irreversible effects." *Eknes-Tucker*, slip op. at 35-36. Under rational basis review, state laws are afforded a "strong presumption of validity." *Id.* at 35 (citation omitted). The Eleventh Circuit concluded that "[a]lthough rational speculation is itself sufficient to survive rational basis review, here Alabama relies on both record evidence and rational speculation" to show that its law was "rationally related to that compelling state interest." *Id.* at 36.

First, "the record evidence is undisputed that the medications at issue present *some* risks," including "'loss of fertility and sexual function.'" *Id*. So too here. Defendants' experts presented extensive evidence about the risks of lifelong, irreversible harm resulting from cross-sex hormonal interventions. *See* Hruz Report ¶¶77-83; Laidlaw Report ¶¶91-158. And Plaintiffs' experts did not meaningfully dispute the existence of those risks. *See* Dkt. No. 106 at 16, 52 (Plaintiffs' experts "do not deny" risks of "impairment to fertility"). Indeed, as Dr. McNamara conceded during the hearing,[1] WPATH itself acknowledges that cross-sex hormones will result in permanent changes to a person's body as well as *clinically significant* risks of blood clots and infertility. *See* Pls. Ex. 9 at S254, Appendix C, Tables 1-2. This is precisely why "'several European countries have restricted treating minors with transitioning medications due to growing concern about the medications' risks,'" *Eknes-Tucker*, slip op. at 36—evidence that Defendants discussed extensively in their expert reports and at the hearing. *See* Defs. Exs. 1-5 (European studies); Cantor Report ¶¶79-88; Hruz Report ¶¶107-11; Laidlaw Report ¶¶249-55.

---

[1] Plaintiffs have not yet received the transcript of the evidentiary hearing so cannot provide page citations of the testimony at this time.

Second, the Eleventh Circuit emphasized that "there is at least rational speculation that some families will not fully appreciate those risks and that some minors experiencing gender dysphoria ultimately will desist and identify with their biological sex." *Eknes-Tucker*, slip op. at 36. There is no need for any speculation here. As Dr. Cantor explained at length in both his report and testimony, recent years have seen an unexplained surge in the presentation of gender dysphoria among adolescents, with cases skewing heavily toward adolescent girls. *See* Cantor Report ¶¶137-39.[2] Plaintiffs' expert Dr. Massey conceded at the hearing that he has seen a "large increase" in gender dysphoria patients in Georgia in recent years. And even WPATH has acknowledged that cases among adolescents are 2.5 to 7.1 times more prevalent among girls than boys. *See* Pls. Ex. 9 at S43. *Eknes-Tucker* confirms that Georgia could reasonably proceed with caution to ensure that this surging new population of adolescents experiencing gender dysphoria is not saddled with the lifelong, irreversible, and severe effects of experimental medical interventions with unproven benefits but well-documented risks.

In all events, as Judge Brasher persuasively explained in his concurring opinion in *Eknes-Tucker*, the Alabama law would likely survive even intermediate scrutiny. The Alabama plaintiffs—like Plaintiffs here—argued that the law was insufficiently tailored because it involved a "ban" on certain medical interventions rather than some less restrictive alternative. *Eknes-Tucker* (Brasher, J., concurring), slip op. at 9. But the proper question under intermediate scrutiny is "whether the state has an interest in classifying based on sex without also asking whether, even if the state were allowed to classify based on sex, the state could achieve its objective with some

---

[2] Notably, Dr. Cantor also served as an expert for Alabama in *Eknes-Tucker*, where—as here—he testified that the purported benefits of hormonal interventions are based on the "lowest quality of evidence" and that "comorbidities, including mental health issues, should be resolved prior to pursuing" hormonal interventions. *Eknes-Tucker*, slip op. at 19-20.

lesser restriction." *Id.* at 10. "[I]t seems clear that the state has an interest in regulating these drugs differently when they are prescribed to treat a discordance between sex and gender than when they are prescribed to treat other conditions." *Id.*

### III.   There are no alternative grounds that could justify enjoining SB 140.

**A.**    Plaintiffs also raised a second claim based on the purported substantive due process right of parents to administer cross-sex hormones to minor children, *see* Dkt. No. 2-1 at 15-17 (moving for preliminary injunction on this claim), but this Court did not reach the issue in light of its holding on the Equal Protection Clause, *see* Dkt. No. 106 at 37.

The Eleventh Circuit has confirmed that this claim is equally unlikely to succeed on the merits. *See Eknes-Tucker*, slip op. at 24-37. The relevant Supreme Court precedent regarding parental rights overwhelmingly concerns "issues of education, religion, or custody." *Id.* at 30. And the Supreme Court's decision in *Parham v. J.R.*, 442 U.S. 584 (1979)—which Plaintiffs here also cite—"does not at all suggest that parents have a fundamental right to direct a particular medical treatment for their child that is prohibited by state law." *Eknes-Tucker*, slip op. at 32. The Eleventh Circuit also distinguished its own precedent in *Bendiburg v. Dempsey*, 909 F.2d 463 (11th Cir. 1990), explaining that "this Court affirmed the determination that the father had no *substantive* due process claim and recognized that '[t]he state has an interest in protecting the health, safety, and welfare of children residing within its borders.'" *Eknes-Tucker*, slip op. at 33 (quoting *Bendiburg*, 909 F.2d at 468, 470). In short, "decisions applying the fundamental parental rights in the context of medical decision-making do not establish that parents have a derivative fundamental right to obtain a particular medical treatment for their children as long as a critical mass of medical professionals approve." *Id.* at 34.

**B.**     Finally, Plaintiffs have argued that transgender status is itself a quasi-suspect class that triggers heightened scrutiny under the Equal Protection Clause. *See* Dkt. No. 2-1 at 19. This Court did not reach the issue in light of its holding that SB 140 draws sex-based classifications that trigger heightened scrutiny. *See* Dkt. No. 106 at 47 n.23.

The Eleventh Circuit rejected the notion that Alabama's law "is subject to heightened scrutiny because it classifies on the basis of transgender status, separate from sex." *Eknes-Tucker*, slip op. at 46. "[T]he regulation of a course of treatment that, by the nature of things, only transgender individuals would want to undergo would not trigger heightened scrutiny unless the regulation is a pretext for invidious discrimination against such individuals." *Id.* Here, Plaintiffs did not allege in either their complaint or preliminary injunction motion—nor did this Court find— that SB 140 was the product of any animus or invidious discrimination, as opposed to a good-faith effort to protect children from the irreversible, lifelong effects of experimental treatments with unproven benefits but well-documented risks to health and fertility.

## CONCLUSION

This Court should grant the motion for reconsideration, vacate its prior order (Dkt. No. 106), and deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted this 22nd day of August, 2023.

| | |
|---|---|
| Christopher M. Carr | */s/ Jeffrey M. Harris* |
|   *Attorney General* | Jeffrey M. Harris* |
|   Georgia Bar No. 112505 | Cameron T. Norris* |
| Stephen J. Petrany | Tiffany H. Bates* |
|   *Solicitor General* | Consovoy McCarthy PLLC |
|   Georgia Bar No. 718981 | 1600 Wilson Blvd., Suite 700 |
| Ross W. Bergethon | Arlington, VA 22209 |
|   *Principal Deputy Solicitor General* | (703) 243-9423 |
|   Georgia Bar No. 054321 | jeff@consovoymccarthy.com |
| Georgia Department of Law | cam@consovoymccarthy.com |
| 40 Capitol Square SW | tiffany@consovoymccarthy.com |
| Atlanta, Georgia, 30334 | |
| 404-458-3408 | Patrick Strawbridge* |
| spetrany@law.ga.gov | Consovoy McCarthy PLLC |
| | Ten Post Office Square |
| | 8th Floor South PMB #706 |
| | Boston, MA 02109 |
| | (617) 227-0548 |
| | patrick@consovoymccarthy.com |
| | |
| | **pro hac vice* |
| | |
| | *Attorneys for Defendants* |

## CERTIFICATE OF SERVICE

I certify that, on August 22, 2023, I electronically filed the foregoing with the Court and served it on opposing counsel through the Court's CM/ECF system. All counsel of record are registered ECF users.

*/s/ Jeffrey M. Harris*